UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARRISON HUMPHRIES,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____/

Case No. 18-12123

Gershwin A. Drain
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 11, 12)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On July 6, 2018, plaintiff Harrison Humphries filed the instant suit. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Gershwin A. Drain referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income benefits. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. 11, 12).

B.    Administrative Proceedings

Humphries filed an application for a period of disability, disability insurance benefits, and supplemental security income on November 10, 2014, alleging disability beginning on April 1, 2007.  (Tr. 11).[1]  The claims were initially disapproved by the Commissioner on February 19, 2016.  Humphries requested a hearing and on June 27, 2017, he appeared with counsel before Administrative Law Judge ("ALJ") J. William Callahan, who considered the case *de novo*.  (Tr. 11-32).  In a decision dated November 20, 2017, the ALJ found that plaintiff was not disabled.  (Tr. 32).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on May 31, 2018, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 7.  All references to the same are identified as "Tr."

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Humphries, born July 7, 1982, was 24 years old on the alleged disability onset date.  (Tr. 30).  His date last insured is December 31, 2007.  (Tr. 14).  He attended school through 11th grade (Tr. 382) and has past relevant work as a machine feeder, groundskeeper, child monitor/babysitter, and odd job worker.  (Tr. 30).  Humphries was injured in a car accident in April 2006, which resulted in hip replacement surgery.  He was involved in a second car accident in 2009.  (Tr. 15, 24).

The ALJ applied the five-step disability analysis and found at step one that Humphries had not engaged in substantial gainful activity since April 1, 2007, the alleged onset date.  (Tr. 14).  At step two, the ALJ found that Humphries' left acetabular fracture status post open reduction internal fixation, history of L5 plexopathy, morbid obesity, history of traumatic brain injury with loss of consciousness, diabetes mellitus type II, and generalized anxiety disorder were "severe" within the meaning of the second sequential step.  However, at step three, the ALJ found no evidence that plaintiff's impairments singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 15-18).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

3

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform sedentary work as defined
> in 20 CFR 404.1567(a) and 416.967(a) except maximum
> lifting and carrying of 5 pounds in one hand; maximum
> standing of 15 minutes at a time; not able to climb
> ladders, ropes or scaffolds; not able to climb ramps or
> stairs; only occasionally able to balance or stoop; not
> capable of kneeling or crawling; only incidentally being
> able to crouch, meaning one time per hour for one
> minute; no manipulative, visual or communication
> limitations; must avoid and cannot be exposed to hazards
> such as unprotected heights, fast moving, sharp surfaces
> or objects or fast moving, heavy machinery; capable of
> occasional driving; he is limited to unskilled work with
> only occasional interaction with the general public and
> frequent interaction with coworkers; might be off task
> 10% of the day in addition to regular breaks and may
> miss one day per month for valid medical reasons.

(Tr. 18).  At step four, the ALJ found that plaintiff was unable to perform any past

relevant work.  (Tr. 30).  At step five, the ALJ denied plaintiff benefits because he

found that there were jobs that exist in significant numbers in the national economy

that plaintiff can perform.  (Tr. 31-32).

    B.    Plaintiff's Claims of Error

     Humphries' first argument for remand is that the ALJ failed to recontact the

consultative physician for more information pursuant to 20 C.F.R §

404.1512(e)(e).  (Dkt. 11, at p. 10).  The consultative physician, Dr. Miller, opined

that Humphries' impairments met Listings 1.03 and 1.04, but the ALJ rejected that

portion of Dr. Miller's opinion.  Humphries contends that the ALJ should have re-contacted Dr. Miller to give Dr. Miller "the opportunity to address the ALJ's concerns again."  He contends that the ALJ's failure to recontact was a "direct violation" of the regulation.  (*Id.* at p. 11).

Next, Humphries argues that the ALJ did not provide a narrative discussion of his RFC, nor did he address Humphries' ability to do work-related activities involving the seven strength domains: sitting, standing, walking, lifting, carrying, pushing, and pulling, in violation of SSR 96-8p.  Humphries concludes, based on the lack of narrative function-by-function discussion, that the RFC is conclusory and does not comply with SSR 96-8p and SSR 85-15.  (*Id.* at p. 11-12).

Third, Humphries contends that the ALJ did not comply with SSR 96-6p because he did not consider consultative examining physician Dr. Rojas' opinion that Humphries required a walking cane and did not assign weight to Dr. Rojas' opinion.  Instead, the ALJ noted that the exhibit in which Dr. Rojas' opinion is found comported with the RFC.  However, the ALJ did not include a limitation to using a cane in the RFC, which according to plaintiff shows that the ALJ did not determine whether Humphries needed a cane.  (*Id.* at p. 13).

Finally, Humphries argues that the case should be remanded because the ALJ did not consider his medication side effects.  He testified that his medication caused diarrhea, hard stools, and drowsiness.  The ALJ, however, did not "provide

evidence which refutes Plaintiff's alleged side effects from his medication" and did not address how his medications would affect his ability to work.  (*Id.* at p. 14-15).

C.    Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ was not required to recontact consultative physician Dr. Miller before discounting his opinion on the Listings. The Commissioner points out that plaintiff does not suggest that he in fact meets Listing 1.03 or 1.04, but argues only that the ALJ had a duty to recontact Dr. Miller to give him an opportunity to address the ALJ's concerns.  The Commissioner contends that the ALJ had no such duty.  While plaintiff relies on 20 C.F.R. § 404.1512(e) to support his argument, the duty to recontact was eliminated from this regulation in March 2012.  Under the new rule, the decision to recontact a treating source is a matter of the ALJ's discretion.  (Dkt. 12, at p. 4-5). Further, even if the ALJ had a duty to recontact, the Commissioner insists there was no error here because the evidence in the record was sufficient for the ALJ to conclude that Humphries did not meet the listings.  (*Id.* at p. 6-8).

Regarding Humphries' argument that the ALJ did not provide a narrative discussion of the RFC, the Commissioner counters by pointing to the 12 pages of RFC analysis in the ALJ's decision.  According to the Commissioner, SSR 96-8p does not require a detailed function-by-function analysis in order to show that the ALJ's decision was supported by substantial evidence.  (*Id.* at p. 8).  Rather, the

6

ruling requires only that the ALJ consider a plaintiff's exertional and non-exertional capacities.  As for the physical RFC, the ALJ considered Humphries' RFC with respect to his ability to sit, stand, walk, lift, carry, push, and pull.  (*Id.* at p. 9-13) (discussing medical evidence ALJ evaluated).  The Commissioner also contends that the ALJ sufficiently discussed the evidence related to Humphries' mental RFC.  (*Id.* at p. 13-4).  The Commissioner notes that plaintiff does not suggest what additional limitations the ALJ should have included in the RFC, as is his burden to do.  (*Id.* at p. 15).  Instead, the only place in the record Humphries cites in this argument is the ALJ's decision.  (*Id.* at p. 16).

Next, the Commissioner argues that the ALJ properly considered consulting physician Dr. Rojas' opinion.  While Humphries relies on SSR 96-6p to argue that the ALJ was required to treat Dr. Rojas' opinion as an expert opinion and assign weight to the opinion, the Commissioner points out that SSR 96-6p was rescinded prior to the ALJ's decision.  The regulation in place at the time of the ALJ's decision required the ALJ to simply "consider" evidence from expert medical sources.  (*Id.* at p. 17).  The ALJ considered Dr. Rojas' opinion and found it was consistent with the RFC.  However, Dr. Rojas found that the evidence supported the need for a walking aid to reduce pain, while the ALJ did not include use of a cane in the RFC.  According to the Commissioner, the ALJ's decision in this regard is supported by substantial evidence.  Other physicians indicated that

7

Humphries did not require a cane and Dr. Rojas' opinion recorded that plaintiff did not need a cane to walk independently.  (*Id.* at p. 18).  Moreover, even if the ALJ had included a cane to ambulate in the RFC, the vocational expert testified that if a person with characteristics similar to Humphries needed to use a cane in the dominant hand while standing, that person could perform the job of food sorter, of which there were 25,000 jobs in the national economy.  (*Id.* at p. 19).

Finally, the Commissioner says that the ALJ expressly considered Humphries' subjective complaints of medication side effects.  The Commissioner argues that the ALJ may discount subjective complaints of medication side effects where they are not documented in the record.  (*Id.* at p. 20-21).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").

9

"However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health*

*& Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the

plaintiff can perform.  (*Id*.).  "If the Commissioner makes a dispositive finding at

any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.  <u>Analysis and Conclusions</u>

1.  Recontacting Consultative Physician Dr. Miller

An ALJ may seek "additional evidence or clarification" if s/he "cannot reach a conclusion about whether" the claimant is disabled.  20 C.F.R. § 404.1520b(c)(1).  However, recontacting a medical source is appropriate "only if

13

the evidence received from that source is inadequate for a disability

determination." *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 416 (6th

Cir. 2006).  "Absent a gap in the record, the ALJ has no duty to recontact the

physician." *Starkey v. Comm'e of Soc. Sec.*, 2008 WL 828861, *4 (W.D. Mich.

Mar. 26, 2008) (citing *Johnson v. Barnhart*, 138 Fed. Appx. 186, 189 (11th Cir.

2005)).  Moreover, the regulation pertaining to recontacting medical sources was

revised effective March 26, 2012, clarifying that the decision to recontact a source

is within the discretion of the ALJ.  The regulation provides, in pertinent part:

> We *may* recontact your treating physician, psychologist,
> or other medical source. We *may* choose not to seek
> additional evidence or clarification from a medical source
> if we know from experience that the source either cannot
> or will not provide the necessary evidence.

20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) (emphasis added).  In other words,

"ALJs now have discretion to decide whether to recontact." *Hollis v. Comm'r of

Soc. Sec.*, No. 13-13054, 2015 WL 357133, at *23 (E.D. Mich. Jan. 27, 2015).  At

the time of the decision, the ALJ could re-contact a physician where the

"administrative record contains insufficient information to reach a disability

decision." *Weredick v. Comm'r of Soc. Sec.*, 2017 WL 4928649, at *8 (E.D. Mich.

Aug. 4, 2017), *report and recommendation adopted*, 2017 WL 4112341 (E.D.

Mich. Sept. 18, 2017).

Humphries has relied on outdated portions of § 404.1512.[2]  Thus, as a matter of law, his argument that the ALJ was required to recontact the consultative physician fails, as there is no longer a requirement mandating recontact in this instance.  Further, the regulations in place at the time of the ALJ's decision state that only if the record evidence is insufficient to determine disability, or if the ALJ cannot reach a conclusion on disability, will the ALJ determine how to resolve the problem, and could, for example, recontact a medical source.  *Thomas v. Comm'r of Soc. Sec.*, 2019 WL 2063836, at *9 (E.D. Mich. Feb. 25, 2019).  Humphries does not argue that the record is insufficient to make a disability determination.  Instead, he argues that Dr. Miller should have be recontacted before the ALJ rejected the Listings opinion to respond to the ALJ's concerns.  The regulations do not require an ALJ to recontact a physician for further explanation before rejecting all or part of that physician's opinion.  Accordingly, plaintiff's argument should be rejected.

Moreover, the ALJ's decision to reject the listings opinion is supported by substantial evidence, and plaintiff does not argue otherwise.  Listing 1.03 provides,

> Reconstructive surgery or surgical arthrodesis of a major
> weight-bearing joint, with inability to ambulate

---

[2] Plaintiff's counsel has been told as much in other cases in which she relied on an outdated version of the regulation in a similar argument.  *McClaine v. Comm'r of Soc. Sec.*, 2018 WL 1309877, at *7 (E.D. Mich. Jan. 29, 2018); *Thomas v. Comm'r of Soc. Sec.*, 2019 WL 2063836, at *8 (E.D. Mich. Feb. 25, 2019); *Perry v. Comm'r of Soc. Sec.*, 2016 WL 6828673, at *4 (E.D. Mich. Feb. 1, 2016).

> effectively, as defined in 1.00B2b, and return to effective
> ambulation did not occur, or is not expected to occur,
> within 12 months of onset.

20 C.F.R. pt. 404, subpt. P, app. 1.  Section 1.00(B)(2)(b) defines the inability to

ambulate effectively as an "extreme limitation of the ability to walk" that interferes

"very seriously" with the claimant's ability to independently engage in activities.

Ineffective ambulation is defined as having insufficient lower extremity

functioning to permit independent ambulation without the use of a hand-held

assistive device that limits the functioning of both upper extremities.

As the ALJ pointed out, the record shows that Humphries can walk

independently without the use of a cane or walker.  Humphries' pain management

physician, Dr. Teklehaimanot, said as much on September 21, 2016.  (Tr. 537,

"Patient is walking independently without any assistive device; patient is not using

a cane or walker, able to climb stairs.").  Further, Dr. Teklehaimanot continued to

report that plaintiff was walking independently without the use of a cane or walker.

(Tr. 513, 522, 525, 528, 531).  As such, there is no basis on which to conclude that

Humphries cannot ambulate effectively and thus does not meet or equal Listing

1.03.

Listing 1.04 involves disorders of the spine (e.g., herniated nucleus

pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc

disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root or the spinal cord with (A) evidence of nerve root compression, (B) spinal arachnoiditis, or (C) lumbar spinal stenosis resulting in pseudoclaudication and the inability to ambulate effectively.  The ALJ quickly dispatched with 1.04C, which requires an inability to ambulate, based on Humphries' ability to ambulate effectively.  1.04B is not met or medically equaled because there is no evidence of spinal arachnoiditis manifested by severe burning or painful dysesthesia.  Finally, there appears to be no basis on which to conclude that Humphries' impairments meet or medically equal 1.04A.  Subsection A requires compromise of a nerve root with

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

There is no evidence of compromise of a nerve root or nerve root compression on imaging of the lumbar spine, (Tr. 391, 398), and it does not appear that any physician raised a concern that nerve root compression may be present in Humphries.  Indeed, a CT scan performed on July 13, 2016 revealed no distinct site of tight canal or tight foramina in the lumbar spine.  (Tr. 398).  While there is

evidence of positive straight leg raising and limited motion of the spine,
Humphries has provided no evidence that describes how his impairment is
equivalent to the listing, considering there is no evidence of nerve root
compression on lumbar scans. *Lusk v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 405,
411 (6th Cir. 2004) (Plaintiff must "present medical evidence that describes how
[her] impairment is equivalent to a listed impairment."); *Daniels v. Comm'r of Soc.
Sec.*, 70 Fed. Appx. 868, 874 (6th Cir. 2003) (Plaintiff must present medical
findings showing symptoms or diagnoses equal in severity and duration "to all the
criteria for the one most similar listed impairment."); *see also Roby*, 48 Fed. Appx.
at 536 ("The claimant has the burden at the third step of the sequential evaluation
to establish that he meets or equals a listed impairment.") (internal citations
omitted).

> 2.     Narrative Discussion of RFC

Humphries argues that the ALJ did not discuss how he reached the RFC and
did not provide a function-by-function analysis of both the physical and mental
RFC. He says that the RFC analysis is conclusory.

The Court's observation in *Sanders v. Comm'r of Soc. Sec.*, 2018 WL
2181096, at *5 (E.D. Mich. Jan. 23, 2018) is apt here:

> [C]ontrary to Plaintiff's argument, while SSR 96-
> 8p implicitly requires an ALJ to consider all work-related
> limitations and functions in determining a claimant's non-

exertional capacity, it does not require an ALJ to explicitly address Plaintiff's limitations with regard to every work-related function—especially if Plaintiff is not limited with regard to a particular function. *See* SSR 96-8p. In fact, in response to similar arguments advanced by Plaintiff's counsel in other cases, the Court has repeatedly held that an ALJ need not address every possible work-related function. *See*, *e.g.*, *Gilbert v. Comm'r of Soc. Sec.*, No. 15-CV-11325, 2016 WL 8114195, at *5 (E.D. Mich. Apr. 29, 2016); *Sumner v. Comm'r of Soc. Sec.*, No. 13-14303, 2014 WL 6809891 (E.D. Mich. Dec. 2, 2014). In so holding, the Court relied on Sixth Circuit precedent for the premise that "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc Sec.*, 30 Fed.Appx. 542, 547-48 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, No. 00-1995, 251 F.3d 153 (Table) (3d Cir. Dec. 19, 2000)).

Humphries avers that "nowhere in the ALJ's decision, besides outlining the RFC on Page 8, does the ALJ provide a narrative discussion on how he reached the RFC." (Dkt. 11, at p. 12). Yet, the ALJ's discussion of the medical evidence and plaintiff's subjective complaints expressly covers plaintiff's functional abilities and explains the RFC determination. The ALJ first discussed all of Humphries' subjective complaints. (Tr. 19-23). The ALJ then went on to discuss the findings and opinions of the doctors in the record. (Tr. 23-30). Specifically, the ALJ discussed the opinion of consultative examiner Dr. Rojas, who opined on Humphries' back, hips, gait, reflexes, and mood. (Tr. 24). The ALJ also discussed

psychological consultative examiners Ms. Rosenzweig and Dr. Mills, who, after clinical interview and mental status evaluation, diagnosed depression and anxiety and opined on plaintiff's functional capacity in light of the mental impairments. (Tr. 25). The ALJ then addressed the medical evidence from plaintiff's pain management physicians, Dr. Bothra and Dr. Teklehaimanot, who treated his back and hip pain and noted his medication, pain, and functional abilities. (Tr. 25-27). In addition, the ALJ discussed the findings and conclusions of the state agency reviewing physicians—one discussing Humphries' physical impairments, and the other his mental impairments—who addressed Humphries ability to perform work-related activities in the physical and mental domains. (Tr. 28-30; Tr. 126-27; Exhibit 16F). Notably, an ALJ complies with SSR 96-8p by explicitly discussing a physician's opinion which contains discussion of functional abilities. *Shannon v. Comm'r of Soc. Sec.*, 2017 WL 4985643, at *6 (E.D. Mich. Aug. 23, 2017) (Holding that ALJ complied with SSR 96-8p where explicitly discussed physician's opinion which opined on the plaintiff's functional abilities as Dr. Khalid did here).

Contrary to plaintiff's assertion, the ALJ's eleven-page RFC discussion is far from conclusory. The ALJ expressly discussed Humphries' functional abilities and discussed the medical opinion evidence, which addressed Humphries'

functional abilities.  Accordingly, the undersigned suggests that the case should not be remanded on this basis.

> 3.    Dr. Rojas' Cane Opinion

Humphries takes issue with the ALJ's rejection of the portion of Dr. Rojas' opinion in which he opined that the evidence supports the need to use a cane to ambulate, and that the ALJ did not assign a particular weight to Dr. Rojas' opinion.

Dr. Rojas conducted a consultative examination in December 2015.  After discussing Dr. Rojas' opinion and findings, the ALJ determined that Dr. Rojas' opinion was consistent with the RFC.  (Tr. 24).  However, the ALJ did not include the use of a cane in the RFC, despite Dr. Rojas' opinion that the evidence supported the use of cane.  Dr. Rojas began his report by noting that Humphries did not use a cane when walking.  (Tr. 382).  Humphries had mild difficulty standing up from a chair and getting on and off the examining table.  (Tr. 383).  He had moderate tenderness and reduced range of motion on the left hip.  His gait was guarded, but again, he was not using an assistive device.  Tendon reflexes were sluggish bilaterally, but no objective sensorimotor deficit.  (*Id.*).  Dr. Rojas provided a "Neurologic and Orthopedic Supplemental Report" in which he noted that evidence supported the use of a cane to reduce pain.  (Tr. 385).  Dr. Rojas also noted that Humphries did not have a walking aid at that time.

21

The ALJ's failure to assign a specific weight to Dr. Rojas' opinion is not cause for remand. The undersigned notes that the ALJ specifically stated he found Dr. Rojas' opinion comported with the RFC. (Tr. 24). Thus, while not providing a specific weight determination, this statement indicates that the ALJ at least was not rejecting Dr. Rojas' opinion, and found it consistent with the RFC.

The regulations require an ALJ to consider and weigh the medical opinions in the record, giving a treating physician's opinion greater deference than a consulting physician's opinion. 20 C.F.R. § 404.1527(c). The Commissioner argues that Humphries relies on outdated regulations, pointing out that SSR 17-2—which addresses evidence needed to make findings about medical equivalence, a subject not in issue here—replaced SSR 96-6 effective March 27, 2017. While SSR 96-6p is not applicable here, as the Commissioner recognizes, 20 C.F.R. § 404.1527, which was also superseded, remained operative during the time that plaintiff filed his claim, and the ALJ was bound by it.[3] This regulation directs the ALJ to consider a number of factors when considering a medical opinion, including the treatment relationship and the supportability and consistency of the opinion with the other medical evidence. *Id.*; *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 836-37 (6th Cir. 2016) (quoting *Ealy*, 594 F.3d at 514). However, the

---

[3] The superseding regulation, 20 C.F.R. 404.1520c, by its own terms, only covers *claims filed* on or after March 27, 2017. Humphries filed his claim on November 10, 2014 – well before March 27, 2017. Therefore, the superseding version of the regulation does not apply here.

failure to consider or weigh a consulting physician's opinion is harmless error if the opinion is consistent with the RFC, *see Engebrecht v. Comm'r of Soc. Sec,* 572 Fed. Appx. 392, 401-02 (6th Cir. 2014) (assuming ALJ failed to consider consultative examining psychologist's opinion, the error was harmless where ALJ's RFC assessment was consistent with the psychologist's opinion), or where the RFC is more restrictive than the opinion, *Pope v. Comm'r of Soc. Sec.*, 2018 WL 8115399, at *8 (E.D. Mich. May 19, 2016); *Smith v. Astrue*, 2008 WL 650343, at *3 (E.D.Ky. Mar. 6, 2008) (Because the ALJ's RFC is more restrictive than the medical opinion, any error in assigning weight to the opinion was harmless, especially where, as here, "the ALJ's findings specifically refer to an inconsistent portion of the doctor's assessment.").

Dr. Rojas indicated that Humphries could sit, stand, bend, stoop, carry, push, and climb stairs (with some difficulty), but could not squat and arise from squatting. (Tr. 384). Dr. Rojas did not provide specific limits on these abilities. The ALJ's RFC is similar to Dr. Rojas' opinion, but more restrictive. The ALJ limited Humphries' to the following: standing 15 minutes at a time, no climbing of ladders, ramps, scaffolds, or stairs; occasionally able to stoop; no kneeling or crawling, crouching for one minute at a time; and on manipulative limitations. (Tr. 18). These specific restrictions are not inconsistent with Dr. Rojas' restrictions, expect where they are more restrictive. Because the limitations assessed by the

ALJ were more restrictive than those included in Dr. Rojas' report, any error the ALJ committed by failing to specify the weight accorded the opinion was harmless.

Moreover, if the ALJ's failure to include a limitation of using a cane for ambulation in the RFC presents any error, it is harmless for the additional reason that there are a significant number of available jobs Humphries could perform even with that limitation.  As the Commissioner points out, the vocational expert (VE) was asked at the hearing whether a person with plaintiff's RFC could still perform work available in sufficient numbers in the national economy with the added limitation of using a cane with the dominant hand while standing.  (Tr. 93).  The VE responded that, even with the added cane limitation, the individual could perform the job of a sorter, of which there were 25,000 jobs nationally.  (Tr. 91, 93).  This number of jobs constitutes a "significant" number of available jobs at Step Five.  *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902 (6th Cir. 2016) (6,000 in national economy jobs "fits comfortably" within what courts have found significant).  An ALJ's error may be harmless and "will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).  Accordingly, since the ultimate determination that there are a significant number of

available jobs that Humphries could perform would not change even with an added cane limitation, any error here is harmless.

4.    Medication Side Effects

Humphries argues that the ALJ did not properly consider the side effects of his medications.[4]  Yet, a claimant asserting debilitating medicinal side effects must present objective medical evidence to support his claim.  *See Farhat v. Sec'y of Health & Human Servs.*, 972 F.2d 347, 1992 WL 174540, at *3 (6th Cir. July 24, 1992) (unpublished) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986)).  Humphries has not pointed to any objective medical evidence to support his assertion of disabling side effects of his medication(s).  *See Essary v. Comm'r of Soc. Sec.*, 114 Fed. Appx. 662, 665 (6th Cir. 2004) ("Although Essary testified that she suffered from dizziness and drowsiness as a result of her medications, Essary's medical records make no indication that Essary reported such side effects to any of her physicians."); *Hopkins v. Comm'r of Soc. Sec.*, 96 Fed. Appx. 393, 395 (6th Cir. 2004) (alleged medication side effects of drowsiness, nausea, and blurred vision "not documented in the record").  At the

---

[4] Humphries relies on SSR 96-7p for the proposition that the ALJ is required to consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms."  SSR 96-7p was superseded by SSR 16-3p approximately one month prior to the ALJ's decision.  SSR 16-3p directs ALJs to discuss medical sources and "important information about symptoms" reported in the record, including "[a] longitudinal record of any treatment and its success or failure, including any side effects of medication."

administrative hearing, Humphries testified that he suffered from these side effects and that he told Dr. Ducato about the side effects. (Tr. 69-70). The ALJ discussed Humphries' complaints in the decision. (Tr. 21). However, there is no indication in the medical records that he told Dr. Ducato about the side effects. (*See* TR. 368-69, 373-81, Exhibit 10F (in which Dr. Ducato noted that Humphries was compliant with meds)). And, there is no indication that he reported side effects to another doctor, or that any physician made a notation about Humphries' suffering side effects. Indeed, in May 2017, Humphries' pain management doctor, Dr. Teklehaimanot, reported that Humphries denied side effects from his medication. (Tr. 516). That report is consistent with his self-completed adult function report from two year prior in which he also indicated "no" to the question of whether his medications caused side effects. (Tr. 262). In the view of the undersigned, Humphries has not established medication side effects in this record that would have affected his ability to perform work activities. Thus, any failure to include limitations in the RFC to account for the side effects is not error.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 25, 2019                    <u>s/Stephanie Dawkins Davis</u>
                                       Stephanie Dawkins Davis
                                       United States Magistrate Judge